judge-ly\ratty\r970080.dp1






 



NUMBER 13-97-080-CR

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI

____________________________________________________________________


CORY DEAN EISEL, Appellant,



v.




THE STATE OF TEXAS, Appellee.

____________________________________________________________________



On appeal from the 329th District Court of Wharton County, Texas.

____________________________________________________________________



O P I N I O N


Before Chief Justice Seerden and Justices Yañez and Chavez

Opinion by Justice Yañez




 A jury convicted Cory Dean Eisel of murdering his mother, Sarah Eisel. Punishment was assessed at ten years
imprisonment and a $10,000 fine. In six points of error, appellant challenges the trial court's denial of his motion for
instructed verdict, the admission of blood spatter expert testimony, a conversation between witnesses, and the prosecutor's
jury argument. This court granted appellant's pro se motion to file a supplemental brief. In his pro se brief, Eisel raises
seven additional points of error, claiming that trial counsel failed to provide him effective assistance of counsel; that the
trial judge erred in admitting the autopsy report into evidence, in presiding over the case because he knew Eisel and the
victim, in not appointing more than one expert to examine Eisel's competency to stand trial, in failing to investigate
appellant's mental condition at the time of the offense, and in not ruling on a motion for acquittal; and finally that the
assistant district attorney concealed exculpatory evidence, failed to investigate exculpatory evidence, and should have
excused himself from the case. We affirm. 

 In his first point of error, appellant argues that after the State presented its case, the trial court should have instructed a
verdict of not guilty because the evidence was insufficient to prove that he intentionally and knowingly caused the victim's
death. A challenge to the trial court's ruling on a motion for an instructed verdict is essentially a challenge to the legal
sufficiency of the evidence to support the conviction. Madden v. State, 799 S.W.2d 683, 686 (Tex. Crim. App. 1990). If
the evidence is sufficient to sustain a conviction, then the trial judge did not err in overruling appellant's motion. Id. When
reviewing the legal sufficiency of the evidence, we review the entire body of evidence in the light most favorable to the
verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a
reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). 

 The evidence shows Sarah Eisel was killed by a shotgun wound to the back of the head on the evening of February 12,
1996. Appellant was handling the weapon at the time the victim was shot. There were no other eyewitnesses to the
shooting. The only question is whether the shooting was deliberate or accidental. 

 According to Eisel's statement, given to police on the same night as the shooting, he was at the kitchen table cleaning a
shotgun when his mother informed him it was still loaded. Eisel claims he attempted to unload the gun, the gun
discharged, and shot his mother in the back of the head as she was walking toward the garage door. Eisel called 911. By
the time the first emergency service personnel arrived on the scene, the victim was dead. Eisel attempted to use
cardiopulmonary resuscitation on his mother in the presence of the emergency personnel. Witnesses testified that on the
night of the shooting Eisel was generally cooperative with police with the exception of one incident in which he accused
the police of trying to trick him. After the shooting, Eisel smoked a cigarette in the house and a family friend admonished
him for it because his mother did not permit smoking in the house. Witnesses testified that gun cleaning supplies appeared
on the kitchen table. The victim had numerous blood-soaked towels under her head when the emergency personnel arrived. 
Police initially considered the shooting accidental.

 Prior to his mother's shooting, Eisel had been involved in an accident which caused him a traumatic brain injury. Even
though Eisel was nineteen years old, his mother was his legal guardian. Some evidence suggested that Eisel and his mother
had a close relationship; other evidence suggested a troubled relationship. Donna Chemlik, Eisel's aunt, recalled an
incident which occurred within the two months prior to Sarah's death in which Eisel refused to go home with his mother
and stated he would kill her first. One week before the shooting, Eisel told Wanda Popp that he just wanted to kill
someone and told Ray Roberson he was going to kill his mother. Audrey Matthys, Eisel's grandmother, testified that when
the victim dropped Eisel off at her house on the morning of the shooting, he repeated three times that he was going to kill
someone. 

 Two witnesses testified that Eisel said he shot his mother purposefully. About a week and a half after his mother's death,
Eisel told Paula Patterson, his ex-girlfriend, that "something just made him do it" and he "felt like he did it on purpose."
Approximately one month after the shooting he told Nicholas Smith, a high school student, that he "killed his mom on
purpose." Eisel then asked Smith if he knew that he was "looking into the eyes of a murderer." 

 Bob Henderson, an independent forensic consultant, analyzed the blood stain patterns left at the scene and testified that the
location and shape of the blood spatters was inconsistent with Eisel's story that he accidentally shot his mother as she was
walking by. According to Henderson, the blood spatter evidence showed that the victim's head was within five or six
inches of the floor when she was shot. Dr. Marilyn Murr, who performed the autopsy on the victim, also testified that the
trajectory of the wound was downward. 

 A Department of Public Safety weapons expert testified that he tested the gun after the shooting, that he was unable to
induce an accidental firing, and that he was not able to discharge the gun in the manner described by Eisel in his statement.
Another witness testified that he and Eisel had gone hunting on a previous occasion and Eisel knew how to handle a
shotgun safely. 

 Viewing the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found
beyond a reasonable doubt that Eisel intended to kill his mother. The trial court did not err in denying the motion for
instructed verdict. Point of error number one is overruled.

 In points of error two and three, appellant argues that the trial court erred in denying the motion to suppress and admitting
the testimony of the blood spatter expert because the State did not establish that the analyzed blood belonged to the victim. 
Appellant challenges the admissibility of the expert's testimony based both on its reliability and its prejudicial impact. The
State argues that appellant may not challenge the expert's testimony on the basis of reliability because he did not assert this
specific objection at trial, and therefore, has waived this complaint on appeal. 

 As a prerequisite to presenting a complaint for appellate review, the record must show that the complaint was made to the
trial court by a timely request, objection, or motion that states its grounds with sufficient specificity to make the trial court
aware of the complaint, unless the specific grounds are apparent from the context. Tex. R. App. P. 33.1(a)(1). In his
written motion, (1) during the hearing on the motion to suppress, and during trial, appellant's counsel never objected to the
testimony based on its reliability. Appellant also argues under this point that the manner in which the evidence was
collected is suspect because some of the blood-stained items had been cleaned prior to the police gathering them as
evidence. Appellant never objected to the expert's testimony on this basis. Furthermore, the jury heard testimony that
even though some of the surfaces had been wiped, the expert could still perform the analysis based on the shape and
location of the blood stains. The expert also testified that some of the blood-stained surfaces which he analyzed in this case
had not been wiped. We agree with the State that any complaint as to reliability of the expert testimony has not been
preserved for our review. We now turn to the issue of the prejudicial impact of the expert's testimony.

 A trial court may exclude relevant and otherwise admissible evidence only if the danger of unfair prejudice substantially
outweighs its probative value. Tex. R. Evid. 403. If the opponent makes the Rule 403 objection, the trial judge must weigh
the probativeness of the evidence to see if it is substantially outweighed by its potential for unfair prejudice, confusion of
the issues, misleading the jury, undue delay, or needless presentation of cumulative evidence. Santellan v. State, 939
S.W.2d 155, 169 (Tex. Crim. App. 1997)(emphasis in original); Suarez v. State, 901 S.W.2d 712, 720-21 (Tex.
App.--Corpus Christi 1995, pet. ref'd). However, in keeping with the presumption of admissibility of relevant evidence,
there is a presumption that relevant evidence is more probative than prejudicial. Santellan, 939 S.W.2d at 169;Montgomery
v. State, 810 S.W.2d 372, 389 (Tex. Crim. App. 1990). Much of the evidence which is admitted against a criminal
defendant is prejudicial. Rule 403 protects the criminal defendant against unfair prejudice. An appellate court reviews the
trial court's ruling on whether to exclude evidence under Rule 403 under an abuse of discretion standard. Santellan, 939
S.W.2d at 169; Montgomery, 810 S.W.2d at 391; Suarez, 901 S.W.2d at 720-21.

 In this case, the blood spatter expert's testimony is relevant to show that the shooting was not accidental, but rather
intentional. Analysis of blood stain patterns, or blood spatter, is the study of the size, shape, and distribution of blood
stains found where blood has been shed. The expert in this case examined blood stains on several items which were near
the victim at the time of the shooting, including a piece of paneling from the kitchen wall and a television and a space
heater which were on the floor. Henderson's opinion was that a shooting caused the bloodshed, and that when the shooting
took place the victim's head was close to the ground. This testimony tended to show that Eisel's mother was not walking
upright at the time of the shooting as Eisel contended in his statement to police. While there was no laboratory testing as to
whether the blood was Sarah Eisel's, laboratory tests indicated that the blood in question was human blood. 

 The unfair prejudice, as argued by appellant, is that the blood may not have belonged to the victim. There is no evidence
in this case that any other shooting took place in the kitchen where the blood-stained items came from. The risk of unfair
prejudice is minimal. Appellant has failed to show that the danger of unfair prejudice substantially outweighed the
probative value of Henderson's testimony. We conclude that the trial court acted within its discretion in allowing the
testimony of the blood spatter expert. Points of error two and three are overruled.

 By his fourth point of error, Eisel complains that the trial court erred in not granting a mistrial after receiving testimony
from witnesses who had violated the "witness rule." (2) Prior to Paula Patterson's testimony, Roberson, a witness who had
already testified in the trial, approached Patterson in the courthouse, instructed her to read a Bible verse, and handed her a
Bible. Patterson complied. During the hearing on the motion for mistrial, Patterson stated that she felt intimidated by this
contact with Roberson, but that she testified truthfully during the trial. Roberson also testified that he gave Patterson and
other witnesses copies of Bible verses before testifying and that he supplied another witness with a copy of the autopsy
report prior to trial.

 The purpose of the witness rule is to prevent the testimony of one witness from influencing the testimony of another. Bell
v. State, 938 S.W.2d 35, 50 (Tex. Crim. App. 1996). From the evidence adduced at a hearing on the motion for mistrial,
Patterson and Roberson never actually conferred on their testimony. Appellant has not shown a violation of the witness
rule. Moreover, even if the witness rule had been violated, we would still have to evaluate whether or not the defendant
had been harmed by the violation. Id. Patterson stated at the hearing on the motion for new trial that she testified
truthfully at trial in spite of the contact with Roberson, and therefore, appellant failed to demonstrate harm. Point of error
number four is overruled.

 In points of error five and six, appellant complains that the trial judge erred in overruling his objection to jury argument. 
In arguing the defendant's motivation for intentionally shooting his mother, the prosecutor stated:

What was [the victim] doing? She was paying up his bowling league fees and, Cory, you can't go bowling anymore. Told
that angry young man, that resentful young man who resented that guardianship, resented his mother, she told him that. He
blows up.



Appellant objected on the basis that there was no evidence in the record that appellant "blew up." The trial court overruled
the objection. Appellant argues that only he and the victim know if appellant was angry and resentful on the night of the
shooting and that neither of them testified. 

 Proper final argument falls into four categories: (1) summation of the evidence; (2) reasonable deductions from the
evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement. Hughes v. State, 878 S.W.2d 142,
157-58 (Tex. Crim. App. 1992). On the day of her death, the victim had written a note and a check to the bowling alley her
son frequented. In the note, Sarah stated she was paying off her son's bowling debt, and that he could not continue to play
in a bowling league because he lost his job and was enrolled as a full time student. Three witnesses testified that appellant
contacted them by phone and asked if they would go bowling with him on the evening of the shooting. Phone records
indicate that three calls had been placed to the bowling alley from the Eisel's phone that evening. Other witnesses testified
that Eisel was generally angry with his mother, that he resented her controlling his life, and that he threatened to kill his
mother. Given these facts, the argument in question was a reasonable deduction from the evidence. Points of error five and
six are overruled. 

 In his seventh point of error, appellant argues that he was denied a fair trial because of ineffective assistance of counsel. In
particular, Eisel criticizes trial counsel's failure to present to the court medical records pertaining to Eisel's traumatic brain
injury; failure to subpoena Eisel's doctors, therapists, nurses, or neurologist; and failure to subpoena any defense witnesses
until Eisel recommended it.

 We evaluate ineffective assistance claims in the pretrial and guilt/innocence phases under a two-part test described in
Strickland v. Washington, 104 S.Ct, 2052, 2064 (1984). To succeed on an ineffective assistance challenge, the appellant
must show: (1) that his counsel made such serious errors that he was not functioning effectively as counsel, and (2) that the
deficient performance prejudiced the defense to the degree that the outcome of the trial is undermined. Strickland, 104
S.Ct. at 2064, 2068. Failure to make the required showing of either deficient performance or sufficient prejudice defeats
the ineffective assistance claim. McFarland v. State, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996). We must consider the
totality of the representation, not isolated incidents of error. Strickland, 104 S.Ct. at 2068-69. There is a strong
presumption that counsel is competent and that actions taken during trial are part of the attorney's trial strategy. Miniel v.
State, 831 S.W.2d 310, 323 (Tex. Crim. App. 1992). The record must affirmatively demonstrate the alleged
ineffectiveness. McFarland, 928 S.W.2d at 500.

 The record does not demonstrate that in failing to introduce medical records or offer testimony of medical personnel,
counsel was not functioning as reasonably effective counsel. In considering the totality of representation, we note that
appellant's trial counsel filed nine pre-trial motions. During the guilt/innocence phase of trial, counsel cross-examined the
State's witnesses with varying degrees of rigor, called and examined four witnesses during the defense's case-in-chief, and
delivered a thorough closing argument to the jury. The defense's theory of the case was that the shooting was accidental;
therefore, the decision not to introduce medical evidence of Eisel's traumatic brain injury may have been part of a trial
strategy. We conclude that appellant has failed to make the required showing that his trial counsel performed deficiently
and caused prejudice. Point of error number seven is overruled.

 Appellant next challenges the admission of the autopsy report. As a prerequisite to presenting a complaint for appellate
review, the record must show that the complaint was made to the trial court by a timely request, objection, or motion. Tex.
R. App. Proc. 33.1(a)(1). The autopsy report was admitted into evidence at trial without objection. Appellant has failed to
preserve this point of error. We overrule point of error number eight.

 By his ninth point of error, appellant complains that the trial judge should not have presided over the trial because he had
"personal knowledge" of the defendant and the victim. Article 30.01 of the Texas Code of Criminal Procedure, cited by
appellant as support for this point of error, provides that a district judge is disqualified if he is the injured party, if he has
been counsel for the State or the accused, or if the accused or the victim may be connected with the judge by consanguinity
or affinity within the third degree. Tex. Code Crim. Proc. Ann. art. 30.01 (Vernon Supp. 1999). Appellant does not assert
any of these bases for disqualification in this case. Point of error number nine is overruled.

 By his eleventh point of error, Eisel contends that the trial court erred in considering the opinion of only one expert as to
Eisel's competency to stand trial and in failing to investigate "appellant's mental condition at the time of the alleged
offense." When a question of a defendant's competency to stand trial is raised, the Code of Criminal Procedure requires the
trial court to appoint a disinterested, experienced, and qualified expert to examine a defendant and report to the trial court
regarding his competency to stand trial. See Tex. Code Crim. Proc. Ann. art. 46.02 § 3(a) (Vernon Supp. 1999). If the
court determines there is some evidence to support a finding of incompetency, a jury shall be impaneled to determine the
defendant's competency to stand trial. See Tex. Code Crim. Proc. Ann. art. 46.02 § 4(a) (Vernon Supp. 1999).

 In this case, after a request made by defense counsel, the trial judge ordered that Eisel undergo a psychiatric evaluation for
his competency to stand trial. A psychiatrist reviewed Eisel's medical records, interviewed Eisel, and delivered a report to
the trial judge in which he concluded that Eisel was able to understand the nature and the purpose of the proceedings
against him and was able to assist in the preparation of his defense. The record shows that appellant made no request for an
additional competency evaluation or for further competency proceedings. The error, if any, has not been preserved for our
review. See Tex. R. App. Proc. 33.1(a)(1).

 We next address Eisel's complaint regarding the trial judge's "failure to investigate" Eisel's sanity at the time of the offense. 
Insanity is an affirmative defense. See Tex. Pen. Code Ann. § 8.01 (Vernon 1994). In order to raise insanity, appellant
must notify the trial court and the State of his intent to present the defense. Martinez v. State, 867 S.W.2d 30, 34 (Tex.
Crim. App. 1993). The notice of intention to raise insanity must be filed with the court at least ten days prior to the date of
trial. See Tex. Code Crim. Proc. Ann. art. 46.03 § 2(a) (Vernon 1979). The Code of Criminal Procedure further provides
that when a notice of intention to raise the insanity defense is filed, the trial court may, on its own motion or motion of the
prosecutor or defense counsel, appoint an expert to examine the defendant with regard to the insanity defense. See Tex.
Code Crim. Proc. Ann. art. 46.03 § 3(a) (Vernon Supp. 1999).

 Appellant filed a notice of intention to raise the insanity defense seven days prior to trial. Even though the notice of
insanity defense was filed late, the record indicates that the trial court offered appellant a psychiatric examination to
evaluate his sanity at the time of the offense. At a pretrial hearing, the following discussion took place on the record:

Defense Counsel: My other Motion is a Notice of Insanity Defense filed on November 11, 1996, after which time we
had an off-the-record discussion in the Judge's chambers in regards to that Motion and the Court had indicated that they
would make a ruling on that here today andoffered to the Defendant the right to have a psychiatric examination on insanity
if the defendant chose to do so after having that discussion; is that correct?



The Court: And that the Motion was denied.



Defense Counsel: Okay. And then at that time--



The Court: Is denied.



Defense Counsel: --should it be denied, that we would not seek additional psychiatric examination?



The Court: Absolutely. Anything else that needs to go on the record? (Emphasis supplied).

 Appellant does not complain of the trial judge's denial of his motion regarding the insanity defense, but the trial court's
failure to "investigate the appellant's sanity at the time of the offense." Given the fact that it was appellant's burden to raise
and prove the affirmative defense of insanity, Tex. Pen. Code Ann. § 8.01 (Vernon 1994), and that the record shows no
specific request for the appointment of an expert to evaluate Eisel's sanity at the time of the offense, we cannot say that the
trial judge erred in "failing to investigate" the insanity defense. See Tex. R. App. Proc. 33.1 (a)(1). Point of error eleven is
overruled.

 In point of error twelve, appellant complains that the assistant district attorney who tried the case should have excused
himself because he was the attorney who established the victim's legal guardianship of Eisel. Because appellant has cited
no authority to support this position and the point is not adequately briefed, we decline to address it. See Tex. R. App. 
Proc. 38.1(h); see also Sanders v.State, 963 S.W.2d 184, 191 (Tex. App.--Corpus Christi 1998, pet. ref'd) (refusing to
address inadequately briefed point of error).

 In his thirteenth point of error, appellant complains of the trial judge's failure to grant or rule on his motion for acquittal
filed on November 10, 1997. The final portion of the appellate record in this case was filed on May 21, 1997. Once the
appellate record is filed in a criminal action, the trial court loses jurisdiction and all further proceedings in the trial court are
suspended until the trial court receives the mandate from the appellate court. See Tex. R. App. Proc. 25.2(e). The trial
court lacked jurisdiction to rule on the motion for acquittal. Appellant's thirteenth point of error is overruled.

 In point of error number ten, appellant raises at least five issues which he claims denied him "due process," but cites no
relevant legal authority for his arguments. First, appellant argues that the crime scene was not properly secured so as to
allow the tainting of evidence. This issue was not preserved for our review. See Tex. R. App. Proc. 33.1(a)(1). Second,
Eisel complains of the blood spatter evidence, the legal sufficiency of the evidence, and the trial judge's failure to rule on
the judgment of acquittal. We need not address these issues here because they are cumulative of other points of error and
are addressed elsewhere in this opinion. Third, appellant complains that the district attorney concealed and failed to
investigate Eisel's medical records, which Eisel claims are exculpatory evidence. Appellant does not allege that he did not
have access to his own medical records; in fact, these medical records were reviewed by the psychiatrist who evaluated
Eisel's competency to stand trial, are referenced in the psychiatrist's report, and appear to have been available to appellant
and his trial counsel at the time of trial. Appellant's complaint that the district attorney concealed and failed to investigate
his medical records is without merit. We overrule point of error ten.

 The judgment of the trial court is AFFIRMED.

 

LINDA REYNA YAÑEZ

Justice





Do not publish. Tex. R. App. P. 47.3.



Opinion delivered and filed this

the 27th day of May, 1999.

1. The legal bases specified in the motion to suppress evidence are: (1) the Fourth Amendment of the United States
Constitution; (2) Article I, § 9 of the Texas Constitution; (3) Chapter 14 of the Texas Code of Criminal Procedure; and (4)
Article 38.23 of the Texas Code of Criminal Procedure.

2. Tex. R. Evid. 614, formerly Tex. R. Crim. Evid. 613.