11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Marvin Andre Jones

Appellant

Vs.                   No.  11-01-00233-CR -- Appeal from Dallas County

State of Texas

Appellee

 

The jury convicted appellant of capital
murder, and the trial court assessed his punishment at confinement for
life.  We affirm.

There is no challenge to the sufficiency of
the evidence.  Linda Marie Duncan
testified at trial that her daughter, Semetria Latrice Colbert, and her
five-year-old granddaughter, Alexus Shavon Lee, lived at 4202 Copeland in
Dallas and that appellant was Semetria=s boyfriend.  On July 29, 2000,
Duncan talked to Semetria, and Semetria said that she was going to
babysit.  Duncan called Semetria later
that night, but was unable to reach her. 
Duncan went to Semetria=s house around midnight, but she did not see anyone there.  Duncan used her key to try and open the
front door.  While she was trying to
open the door, it Apopped
open@ and appellant was there.   Appellant said that Semetria had gone to
babysit.

Duncan testified that she went to bed and
that she called Semetria=s house the next morning. Appellant said that he had not heard from
Semetria.  Duncan called the
police.  Duncan and her husband went to
Semetria=s house, but no one was there.  Duncan used her key to enter the house.  Duncan testified that some of the furniture
had been moved and that some carpet was cut out in Semetria=s bedroom. 
Appellant later arrived at the house. 
Duncan was able to stop a police officer who was driving by, and she
took the officer into the house to show him the things that were disturbed.








Ryan Mangrum testified that on July 29, 2000,
he was at appellant=s
house on Copeland working on cars and that Semetria and Alexus were also
there.   Mangrum said that that
afternoon, Semetria came outside and asked to use the car.   Appellant told Semetria that she could not
use the car, and the two got into an argument. 
Mangrum testified that appellant and Semetria were in the house arguing
when he heard a loud Apop.@ 
Mangrum went inside to get a tool, and he saw appellant with a gun in
his hand and Semetria=s legs
Ahanging out from the bedroom.@  
Appellant later came outside and told Mangrum, AYou didn=t see nothing or you didn=t hear nothing.@  Later that evening, Mangrum
saw appellant moving a trash can, and an arm was hanging out of the trash
can.   Mangrum said that appellant=s friend, Rita Webster, arrived at the house
that night.  Webster went into the house
with appellant, and later she and appellant left together. 

Mangrum further testified that that night Alexus
came to the door and asked for her mother. 
Appellant told Alexus to go back inside.  Appellant went into the house.  
Mangrum went into the house shortly thereafter and saw appellant holding
a limp Alexus in his arms.  Mangrum
never heard Alexus again.  Mangrum
stayed at the house all night sleeping outside in a chair.  The next morning appellant asked Mangrum to
help him move a couch and take a piece of carpet outside.  Mangrum then went home.  Appellant later called Mangrum to come
back.  Mangrum returned  to appellant=s house where he was arrested for outstanding warrants. 

Webster testified that she and appellant were
involved in a Asexual@ relationship and that on July 29, 2000, he Apaged@ her to come over between 6:00 and 7:00 p.m.  Webster arrived at appellant=s house around 8:00 p.m. 
Appellant told Webster that Semetria was Ain the trash can dead.@  Appellant backed the car up to
the fence, and called for Webster.  
Webster went to appellant, and he pulled the trash can over to the
car.  Webster testified that Semetria=s body was in the trash can.  Webster helped appellant put the body into
the trunk of the car.  Webster said that
she and appellant went to the park and dumped Semetria=s body. 

Officer Paul Burbulys with the Dallas Police
Department testified that he was dispatched to Keeton Park in Dallas where a
worker had discovered a body.  The
police found Semetria=s body
behind some trees in the park, and the body was missing one shoe.  Officer Burbulys testified that Semetria=s body had a Alittle silver band on her head@ and Aa sticker...like you put on fruit@ on her cheek.  Semetria died from a gunshot wound to her back. 








Officer Dennis Craig with the Dallas Police
Department testified that while he was on patrol, Duncan approached his car and
told him that her daughter and granddaughter were missing.  Duncan asked Officer Craig to come into the
house because she wanted to show him things in the house that were Adifferent.@  Officer Craig accompanied
Duncan into the house and observed that part of the carpet was missing in the
bedroom.  Officer Craig asked everyone
to leave the house, and he called other officers to the scene.  Outside of the house, the officers found a
trash can that contained the body of Alexus as well as other household
trash.   Dr. Jennie Duval performed an
autopsy of Alexus and determined that she died as a result of blunt head
trauma.  Dr. Duval stated that Alexus
had a very severe skull fracture that indicated she was struck with the amount
of force that is usually seen when someone is involved in a motor vehicle
accident.

In his first, second, and third issues on
appeal, appellant argues that the trial court erred in  Adenying [his] request to remove the jury charge paragraph, charging the
first paragraph of the indictment, because there was no evidence that the two
females were murdered during the >same criminal transaction.=@     The charge authorized the
jury to convict appellant of capital murder if they found that appellant caused
the death of Semetria by shooting her with a firearm, and during the same
criminal transaction, caused the death of Alexus by striking her with or
against an object. In the alternative, the charge authorized the jury to
convict appellant of capital murder if they found that appellant caused the
death of Semetria, and during a different criminal transaction but pursuant to
the same scheme or course of conduct, caused the death of Alexus.  The jury returned a general verdict finding
appellant guilty of capital murder. 

The Court of Criminal Appeals has interpreted
the phrase Asame criminal transaction@ to mean "a continuous and uninterrupted
chain of conduct occurring over a very short period of time...in a rapid
sequence of unbroken events." Jackson v. State, 17 S.W.3d 664, 669
(Tex.Cr.App.2000); Rios v. State, 846 S.W.2d 310, 311‑12
(Tex.Cr.App.1992), cert. den=d,  507 U.S. 1051 (1993);  Vuong v. State, 830 S.W.2d 929, 941 (Tex.Cr.App.),
cert. den=d,  506
U.S. 997 (1992).  If the evidence
supports the rational inference that both victims were killed in the same
criminal transaction, we will not disturb the jury's verdict.  Heiselbetz v. State, 906 S.W.2d 500
(Tex.Cr.App.1995).








Mangrum testified that Semetria asked to use
the car which led to the argument with appellant sometime between 4:00 and 5:00
p.m.  Mangrum stated that he heard a Aloud pop,@ that he went into the house and saw appellant with a gun and Semetria=s legs hanging out of the bedroom, and that
sometime later appellant came outside. 
Appellant then went back into the house and Mangrum did not see him
again until Aclose to dark.@  Webster arrived at the house
around 8:00 p.m.; and she and appellant took Semetria=s body out of the trash can, placed it in the
trunk of the car, and dumped the body in the park.  Mangrum heard Alexus ask for her mother after Webster arrived,
saw Alexus limp in appellant=s arms, and then did not hear her again that night. 

            The record shows that both victims were
killed at the same residence within hours of each other.  Appellant killed Semetria in the late
afternoon, arranged for the disposal of her body, and then killed Alexus sometime
after 8:00 p.m. and disposed of her body in the trash can.  There is some evidence to show that
appellant caused the deaths of Semetria and Alexus in the same criminal
transaction.  See Coble v. State, 871
S.W.2d 192 (Tex.Cr.App.1993), cert. den=d, 513 U.S. 829 (1994).

Moreover, any error in charging the jury that
appellant committed the murders as part of the same criminal transaction was
harmless.  Appellant objected to the
jury charge; and, therefore, reversal is required if the error is calculated to
injure the rights of the defendant, which means no more than that there must be
some harm to the accused from the error. 
Ovalle v. State, 13 S.W.3d 774, 786 (Tex.Cr.App.2000);  Almanza v. State, 686 S.W.2d 157, 171
(Tex.Cr.App.1985).  In other words,
properly preserved error will require reversal so long as the error is not
harmless.  Ovalle v. State, supra.  In reviewing charge error, the actual degree
of harm must be assayed in light of the entire jury charge; the state of the
evidence, including the contested issues and weight of probative evidence; the
argument of counsel; and any other relevant information revealed by the record
of the trial as a whole.  Ovalle v.
State, supra; Almanza v. State, supra. 
The "some harm" test does not mandate reversal on a showing of
possible harm but, rather,  requires
that appellant establish actual harm. 
Medina v. State, 7 S.W.3d 633, 643 (Tex.Cr.App.1999), cert. den=d, 529 U.S. 1102 (2000).








The jury was also authorized to find
appellant guilty of capital murder if they found that he caused the deaths of
Semetria and Alexus pursuant to the same scheme or course of conduct.  Because the jury returned a general verdict
of guilty, we cannot determine upon which theory appellant was convicted.  The record shows that appellant and Semetria
were arguing, that Semetria was shot in the back, and that appellant placed her
body in the trash can before taking the body to the park.  Alexus 
asked appellant where her mother was sometime later that night.  Then appellant went inside with her, and her
body was later found in the trash can. 
We find that appellant has not shown that he was harmed by the jury
instruction because the jury was authorized to convict appellant if they found
he committed the murders pursuant to the same scheme or course of conduct.  The evidence supports a finding of guilt on
that theory.  Appellant=s first, second, and third issues on appeal
are overruled.

In his fourth, fifth, and sixth issues on
appeal, appellant contends that the trial court erred in denying his request
for a jury instruction pursuant to TEX. CODE CRIM. PRO. ANN. art. 38.23 (Vernon
Pamph. Supp. 2002).  Article 38.23
provides that evidence obtained by an officer in violation of the United States
Constitution or Texas Constitution shall not be admitted as evidence.  Article 38.23 also states that:

In any case where the legal evidence raises
an issue hereunder, the jury shall be instructed that if it believes, or has a
reasonable doubt, that the evidence was obtained in violation of the provisions
of this Article, then and in such event, the jury shall disregard any such
evidence so obtained.

 

Appellant argues that the initial search of
his house was illegal because Officer Craig did not have valid consent to
search when he first arrived at the scene. 


Officer Craig testified that Duncan flagged
him down and said that her daughter and granddaughter were missing.  Duncan told Officer Craig that she wanted to
show him some things in the house that were disturbed.  Officer Craig accompanied Duncan into the
house.  Appellant was on the front porch
at this time, and he did not talk to Officer Craig or contact Officer
Craig.  Officer Craig stated that he did
not know Duncan was not the owner of the house.  Officer Craig believed that Duncan owned the house and allowed
Semetria to live there.  Officer Craig
said that appellant later signed a consent to search the residence.








Appellant was entitled to an Article 38.23
instruction only if the evidence raised a fact issue concerning whether the
evidence was obtained in violation of the United States Constitution, Texas
Constitution, or any other laws.   Bell
v. State, 938 S.W.2d 35, 48 (Tex.Cr.App.1996), cert. den=d,  522 U.S. 827 (1997).  When the essential facts concerning a search
or arrest are not in dispute, the legality of the search or arrest is a
question of law, not fact.  Campbell v.
State, 492 S.W.2d 956, 958 (Tex.Cr.App.1973). 
There is no factual dispute concerning the search of the residence.  Officer Craig believed that Duncan had
authority to consent to the search of the house.  When the Officers learned that appellant had authority to consent
to the search, they received a written consent to search from him.  The trial court did not err in denying
appellant=s request for an Article 38.23 instruction.  Appellant=s fourth, fifth, and sixth issues on appeal are overruled.

In his seventh issue on appeal, appellant
complains that he received ineffective assistance of counsel.  In order to determine whether appellant=s trial counsel rendered ineffective assistance
at trial, we must first determine whether appellant has shown that counsel=s representation fell below an objective
standard of reasonableness and, if so, then determine whether there is a
reasonable probability that the result would have been different but for
counsel=s errors. 
Strickland v. Washington, 466 U.S. 668 (1984); Hernandez v. State, 988
S.W.2d 770 (Tex.Cr.App.1999).  We must
indulge a strong presumption that counsel=s conduct fell within the wide range of reasonable professional assistance,
and appellant must overcome the presumption that, under the circumstances, the
challenged action might be considered sound trial strategy.  Stafford v. State, 813 S.W.2d 503, 508-09
(Tex.Cr.App.1991).

Appellant specifically argues that his trial
counsel was ineffective for Afailing to locate appellant=s alibi witness.@  The trial court held a hearing
on appellant=s second motion for new trial.  At that hearing, appellant introduced an
affidavit from John Allen, Sr. which stated that on July 29, 2000, he was with
appellant for about three or four hours playing pool beginning at 4:30 or 5:00
p.m.  The affidavit also stated that no
attorneys or investigators had contacted him about appellant=s case and that he would have appeared for
trial if subpoenaed.  Appellant
introduced an affidavit from his trial counsel that stated he hired David
Wells, a private investigator, to assist him with trial preparation.  Appellant=s trial counsel further stated in his affidavit that appellant gave
Wells a list of potential witnesses prior to trial.  Appellant=s trial counsel relied upon Wells to locate witnesses who might be
beneficial for trial. 








Wells testified at the motion for new trial
that he met with appellant about four times at the jail. Wells received a list
of witnesses from appellant=s mother.  Allen=s name was on the list. Wells stated that he
left messages on a recording for Allen because he did not have a physical
address. Wells and appellant=s trial counsel met with appellant to obtain Allen=s address. 
Appellant did not have Allen=s physical address, but he told them that Allen ran a pool hall. Wells
went to the area, but could not find a pool hall.  He again spoke with appellant who then said it was not a pool
hall, but a mechanic shop.  Wells still
did not have a physical address.  He
went to the mechanic shop, and there were some men working on cars.  He left information with these men for Allen
to contact him.  Wells never received
any response from Allen.

The record shows that appellant=s trial counsel, through his investigator,
made a diligent effort to contact Allen. 
Moreover, Allen=s
affidavit indicates he would testify he was with appellant  for several hours during the evening of July
29, 2000.  Appellant presented testimony
at trial that he was with Mangrum and Webster during that time.  There was also testimony from Kenneth
Singleton that he went to appellant=s house at 4:30 p.m. and stayed until 7:00 p.m.  Therefore, Allen=s testimony would have conflicted with
testimony presented at trial.  Appellant
has not shown that he received ineffective assistance of counsel.  Appellant=s seventh point of error is overruled.

The judgment of the trial court is affirmed.

 

TERRY McCALL

JUSTICE

 

November 14, 2002

Do not publish.  See TEX.R.APP.P. 47.3(b).

Panel consists of: Arnot, C.J., and

Wright, J., and McCall, J.