Opinion filed January 19, 2006












 
 
  
 
 







 
 
  
 
 




Opinion filed January 19, 2006

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                   __________

 

                                                          No. 11-04-00209-CR 

                                                    __________

 

                                   BRYCE WADE O=NEIL,
Appellant

 

                                                             V.

 

                                    THE
STATE OF TEXAS, Appellee

 



 

                                        On
Appeal from the 142nd District Court

 

                                                        Midland
County, Texas

 

                                                Trial
Court Cause No. CR 29,327

 



 

                                                                   O
P I N I O N

 








Bryce Wade O=Neil
was indicted for two counts of intoxication manslaughter and one count of
intoxication assault.  Appellant filed
motions to suppress statements he made to law enforcement officers while in the
hospital emergency room and the results of tests on two blood samples taken at
the hospital.  The trial court granted
appellant=s motions
in part and denied them in part. 
Appellant then pleaded guilty and waived his right to a jury trial.  The trial court sentenced appellant to twenty
years confinement for one intoxication manslaughter count and five years each
for the second intoxication manslaughter count and the intoxication assault
count.  Appellant challenges the trial
court=s ruling
on his pretrial motions to suppress.  We
find no error and affirm.

                                                               Background
Facts

Appellant was in a serious two-vehicle accident in
Midland County on January 30, 2004, shortly before 9 p.m.  The accident involved a Ford Ranger pickup,
owned by appellant, and a Chevrolet Astro van. 
Angela Dawn Lester, the driver of the van, and Nicanor Lopez Hernandez,
a passenger in the pickup, died as a result of the accident.  Appellant and Rachell Warmuskerken, also a
passenger in the pickup, were injured. 
Appellant sustained broken bones in both arms.  He and Warmuskerken were taken by ambulance
to the hospital for treatment.

Kaci Beth Schulte, an emergency room nurse, took
two blood samples from appellant.  The
first was taken at 9:42 p.m. at the request of an emergency room doctor and was
submitted to the hospital laboratory. 
The second was taken shortly after midnight at the request of DPS
Troopers Oscar Villarreal and Nathan Lann who were investigating the accident.

Trooper Villarreal had previously investigated the
accident scene.  He was advised by
another officer that Hernandez was deceased and was seat-belted into the
passenger side of the pickup.  Trooper
Villarreal helped extract Lester from the van. 
Lester was alive at the scene, but Trooper Villarreal learned that she
died in route to the hospital.  Trooper
Villarreal was able to determine that the pickup had been occupied by three
persons:  Hernandez, Warmuskerken, and
appellant.  The pickup had a strong odor
of alcoholic beverages.  There were two bottles
of liquor in the cab of the pickup, and numerous beer bottles and beer cans
were in the debris field near the vehicle.

Troopers Villarreal and Lann went to the
hospital.  Warmuskerken could not be
interviewed because of her condition, but Trooper Villarreal confirmed that she
had injuries consistent with being the middle seat passenger in the pickup.








Trooper Villarreal then contacted appellant who
was being treated in the emergency room. 
Trooper Villarreal smelled a strong odor of alcohol emanating from
appellant.  Trooper Villarreal identified
himself and Trooper Lann to appellant and administered a Miranda[1]
warning.  Appellant waived his rights and
agreed to an interview.  Trooper
Villarreal conducted the interview. 
Appellant initially stated that Hernandez was driving the pickup but
later admitted that he was the driver. 
After interviewing appellant, Trooper Villarreal read him the DIC-24
warnings[2]
and requested a blood sample.  Appellant
consented, and Schulte took the second blood sample.

Appellant was arrested under warrant on February
3, 2004, upon his release from the hospital and was charged with intoxication
manslaughter of Lester and Hernandez and intoxication assault of
Warmuskerken.  Appellant filed motions to
suppress the hospital blood tests and results and his statements to police
officers while in the emergency room. 
The trial court held an evidentiary hearing and granted appellant=s motion to suppress his statements to
Texas Alcoholic Beverage Commission Agent Rodney White Allee but denied his
requests to suppress his statements to Troopers Villarreal and Lann and the
results of his two blood tests.

Appellant waived his right to a jury trial and
pleaded guilty.  The trial court held a
punishment hearing and sentenced appellant to twenty years confinement for the
intoxication manslaughter of Lester, five years for the intoxication
manslaughter of Hernandez, and five years for the intoxication assault of
Warmuskerken.  The trial court ordered that
the five-year sentence for intoxication manslaughter run consecutively to the
twenty-year sentence but that the five-year sentence for the intoxication
assault run concurrently to the twenty-year sentence.

                                                             Issues

Appellant challenges the trial court=s pretrial ruling with four
issues.  Appellant contends that the
trial court erroneously allowed the use of statements made by him to Troopers
Villarreal and Lann before receiving a Miranda warning; the use of
statements secured with unconstitutional coercion; and the use of the two blood
samples taken at the hospital because the first was taken without the consent
required for medical treatment and the second was taken without
constitutionally sufficient consent for a law-enforcement-requested blood
sample.

                                                                      Discussion








The denial of a motion to suppress is reviewed for
an abuse of discretion.  Oles v.
State, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999).  We are required to afford almost total
deference to the trial court=s
determinations of historical facts and credibility and to review de novo
determinations that do not turn on an evaluation of credibility and
demeanor.  Johnson v. State, 68
S.W.3d 644, 652-53 (Tex. Crim. App. 2002). 
The evidence is reviewed in the light most favorable to the trial court=s ruling, and it is assumed that the
trial court made implicit findings of fact supported in the record.  The trial court=s
decision will be sustained if it is correct on any theory of law applicable to
the case.  State v. Ross, 32
S.W.3d 853, 856 (Tex. Crim. App. 2000).

Miranda Warnings

Appellant contends initially that his statements
in the emergency room to Troopers Villarreal and Lann were made after he had
been arrested but before he had been given a Miranda warning and,
therefore, that the statements should  be
suppressed.[3]  A Miranda warning is required when a
person being questioned by law enforcement officials has been taken into
custody or otherwise deprived of his freedom of action in any significant
way.  State v. Subke, 918 S.W.2d
11, 14 (Tex. App.CDallas
1995, pet. ref=d).  

The parties strenuously dispute whether appellant
was in custody at the time of his statements to Troopers Villarreal and
Lann.  It is unnecessary for us to
resolve this issue because the record supports a finding that appellant
received a Miranda warning before he provided any statement to law
enforcement officials.

Trooper Villarreal, Trooper Lann, and Schulte each
testified during the suppression hearing. 
Troopers Villarreal and Lann testified that appellant was given a Miranda
warning before being interviewed.  Both
testified that appellant waived his rights and then answered their questions.
Schulte could not recall the specifics of their conversation but did verify
that the troopers gave appellant a Miranda warning and that appellant
talked to them after receiving the warning.

Troopers Villarreal and Lann testified that, after
their interview, Trooper Villarreal read appellant a DIC-24 warning and asked
for a blood sample.  Both testified that
appellant then agreed to provide a sample. 
Schulte confirmed this.








Appellant=s
counsel vigorously cross-examined the State=s
witnesses.  Troopers Villarreal and Lann
prepared a form in connection with their administration of the DIC-24
warnings.  The form indicates that the
warning was given at 11:30 p.m.  The
warning starts:  AYou
are under arrest for an offense arising out of acts alleged to have been
committed while you were operating a motor vehicle or watercraft in a public
place while intoxicated. . . .@  On February 8, approximately one and one-half
weeks after their interview, Trooper Lann prepared a report of their
investigation.  In that report, Trooper
Lann indicated that appellant was given a Miranda warning at 12:35
a.m.  This, according to appellant,
indicates that he was not given a Miranda warning until one hour after
he had been arrested and after he had answered questions and given a blood
sample.

Troopers Villarreal and Lann both testified that
Trooper Lann=s report
was incorrect on the timing of the Miranda warnings.  Counsel challenged this by showing that
neither trooper prepared a corrected report, that Trooper Lann=s report provided a chronological
summary of the events and it listed the Miranda warning after the blood
sample had been taken, and that there was no audio recording of the troopers
giving appellant a Miranda warning. 
Appellant also points to inconsistencies in Trooper Villarreal=s testimony during the suppression
hearing about the sequence of events.

Counsel=s
vigorous cross-examination created a fact question on whether appellant was
given a Miranda warning before or after providing a statement to the
troopers.  The trial court is the
exclusive trier of fact and judge of the credibility of the witnesses at a
suppression hearing.  Guzman v. State,
955 S.W.2d 85, 89 (Tex. Crim. App. 1997). 
We cannot say that the trial court erred when it resolved this
conflicting testimony against appellant. 
Appellant=s first
issue is overruled.

The Coercive Nature of the Interrogation

Alternatively, appellant argues that his due
process rights were violated because of the coercive nature of the troopers= interrogation.  Appellant contends that his statements were
not freely given because of the circumstances. 
He had a broken left arm and broken right wrist and, therefore, was in
tremendous pain.  He was in a hospital
room from which he was unable to leave, and the troopers=
interrogation lasted approximately forty-two minutes.  Finally, he was intoxicated.








The State counters that this argument was not
presented to the trial court and, therefore, has been waived.  The law is clear that an argument must be
raised in the trial court to preserve it for appeal.  See Tex.
R. App. P. 33.1(a); Bell v. State, 938 S.W.2d 35, 54-55 (Tex.
Crim. App. 1996).  Appellant=s motions to suppress do not raise
coercion as a ground for suppressing the challenged evidence.  Moreover, even if this issue had been raised,
there was adequate testimony in the record from Trooper Villarreal, Trooper
Lann, and Schulte to support a finding that appellant=s
consent was knowingly and freely given. 
Appellant=s second
issue is overruled.

The Blood Tests

In appellant=s
third issue, he contends that the second blood test should have been suppressed
because it was obtained without effective consent.  Appellant acknowledges that the State can
require a blood sample when a fatal accident has occurred but only after the
suspect is arrested.  See Tex. Transp. Code Ann. ' 724.012(b) (Vernon Supp. 2005).  Appellant argues that this provision is
inapplicable because he was not arrested until after he left the hospital and,
therefore, implied consent was not present.

It is unnecessary for us to address whether
appellant was in custody while in the emergency room.  The evidence is sufficient to support a
finding that Trooper Villarreal asked appellant for a blood sample and that
appellant voluntarily agreed to provide one. 
Appellant criticizes Trooper Villarreal=s
and Trooper Lann=s
testimony as self-serving and points out that appellant did not sign a written
consent, that there is no reference to a consensual blood specimen draw in his
medical records, and that the audio tape of his interrogation contains no
evidence of appellant=s
consent.[4]  These challenges go to the credibility of the
witnesses, the resolution of which is in the exclusive province of the trial
court.  Guzman, 955 S.W.2d at
85.  Appellant=s
third issue is overruled.

Appellant=s
fourth issue challenges the use of the initial blood sample taken by Schulte.
Appellant contends that this sample was taken illegally because it was done
without his consent and, therefore, that it may not be used in any criminal
prosecution against him.  Appellant
argues that Schulte needed his consent because he was conscious, he was able to
communicate, he was not a minor, and no family member otherwise provided
consent.

The State counters that this issue was not raised
before the trial court and, therefore, is waived on appeal.  Alternatively, the State argues that it was
not illegal for Schulte to draw the blood for a medical purpose based on a
doctor=s order
and that the record supports a finding of implied consent for medical
treatment.








Appellant=s
issue was not raised in the trial court and cannot be raised for the first time
on appeal.  Rule 33.1(a); Bell,
938 S.W.2d at 35.  Moreover, because we
have found the evidence sufficient to support a finding that appellant
consented to the second blood sample and because this sample showed an alcohol
level of 0.29 grams per 100 ml three hours after the fatal accident, any error
would be harmless.  See Tex. R. App. P. 44.2.

                                                                     Conclusion

We find that the trial court did not err by
denying appellant=s motions
to suppress his statements to Troopers Villarreal and Lann and the results of
his blood tests.  The judgment of the
trial court is affirmed.

 

RICK STRANGE

JUSTICE

 

January 19, 2006

Do not publish.  See
Tex. R. App. P. 47.2(b).

Panel
consists of:  Wright, C.J., and

McCall,
J., and Strange, J.











     [1]Miranda
v. Arizona, 384 U.S. 436 (1966).





     [2]See
37 Tex. Admin. Code ' 17.4(1) (2005)(Administrative License
Revocation)(Referring to Form DIC‑24). 
This form contains the warnings required by Tex. Transp. Code Ann. ' 724.015
(Vernon Supp. 2005).





     [3]Appellant
also relies upon Tex. Crim. Proc. Code
Ann. art. 38.22 (Vernon 2005). 
These will be collectively referred to as Miranda warnings.





     [4]Trooper
Villarreal left the video camera in his car on when he went into the
hospital.  He also left his lapel
microphone on.  Some, but not all, of his
conversations in the hospital could be heard on the tape.