In The



Court of Appeals



Ninth District of Texas at Beaumont


____________________



NO. 09-07-580 CR


____________________



DARRELL WAYNE PARKER, Appellant



V.



THE STATE OF TEXAS, Appellee


 




On Appeal from the Criminal District Court


Jefferson County, Texas


Trial Cause No. 99009 






MEMORANDUM OPINION



 A jury convicted appellant Darrell Wayne Parker of aggravated sexual assault of a
child and assessed punishment at fifty years of confinement. Parker then filed this appeal,
in which he raises sixteen issues for our consideration. We affirm.

Background


 Parker was indicted for allegedly committing an aggravated sexual assault against
M.S. by penetrating M.S.'s anus with his sexual organ. See Tex. Pen. Code Ann.
§ 22.021(a)(1)(B)(i) (Vernon Supp. 2008). (1) M.S. testified that in December of 2005, he was
under fourteen years old, and he lived with his aunt, J.H. M.S. testified that a few weeks
after moving in with J.H., he met Parker, who lived in the apartment next door to J.H.'s
apartment. According to M.S., Parker bought things for him, took him to the movies, gave
him money, let M.S. work on his cars, and allowed M.S. to play his video game. M.S.
testified that Parker also allowed him to view pornographic movies.

 M.S. explained that the first time he spent the night at Parker's residence, Parker
asked M.S. to get off the couch and get in front of Parker, and after putting a cover over both
of them, Parker then placed his penis on M.S.'s leg. According to M.S., approximately one
week later, he again spent the night at Parker's house, and Parker awakened him, told him
to get up, bent him over, and penetrated M.S.'s anus with his penis. M.S. testified that the
next time he awakened, he discovered that Parker had tied him to the bottom of the couch
with rope from a piece of exercise equipment. M.S. testified that he was eventually freed
when Parker untied him after J.H. knocked on the door of the apartment. According to M.S.,
Parker offered to buy a video game system for M.S. if M.S. would perform oral sex on
Parker, and M.S. declined. M.S. explained that he did not tell J.H. about what had happened
because he did not want to worry her, and he was "kind of scared of Mr. Parker." M.S. did
not tell J.H. what had occurred until she specifically asked him if Parker ever "did anything"
to him.

 Dr. James Lukefahr testified that he examined M.S. at the University of Texas
Medical Branch where he was previously the head of the child abuse medical team. Dr.
Lukefahr testified that M.S. had made an outcry of sexual abuse, so he examined M.S. and
tested him for sexually-transmitted diseases. A pediatric nurse practitioner, Tiffany Moffett,
also interviewed M.S. According to Dr. Lukefahr, during the interview, M.S. described
"penetration of his anus by the penis of an adult male[,]" and M.S. identified Parker as the
actor. M.S. reported that "the last contact was about February the 20th of 2005. So, it had
been approximately a year." Dr. Lukefahr testified that he did not find any specific
indications of trauma, but that was not unusual because of the amount of time that had passed
since the last incident, and the fact that the anal area heals quite rapidly.

 Lieutenant John Boles of the Beaumont Police Department testified that he
investigated the offense involving M.S. after M.S. had made an outcry to J.H. Lieutenant
Boles testified that J.H. also reported that Parker had physically and sexually assaulted her. 
Lieutenant Boles explained that charges were not brought against Parker after this initial
outcry by M.S. because the outcry was vague. On December 20, 2005, Lieutenant Boles
received notice that M.S. had made another outcry to a different relative with whom he was
living. Lieutenant Boles testified that M.S.'s second outcry, which contained new
allegations, eventually led to enough evidence to charge Parker with aggravated sexual
assault. According to Lieutenant Boles, it is not unusual for children to initially make only
a partial outcry. When asked whether it is sometimes difficult to ascertain from a child
victim the specific date on which an offense occurred, Lieutenant Boles explained that "[i]t's
usually very difficult with children simply due to the fact they, unlike adults, don't remember
exact times; and depending on how the interview went, they may not have a reference point
to affix that memory to." Lieutenant Boles testified that he selected as the date of the offense
the date that Child Protective Services notified him of M.S.'s second outcry.

 Brandon Adams, Parker's half brother, testified that Parker stayed with him at his
apartment until January or February of 2005. According to Adams, Parker had a dumbbell
set, but did not have any other exercise equipment. Adams also testified that he never saw
any videos that contained sexual activity at the apartment.

 Parker testified that while he was staying in his brother's apartment, he was "messing
around with" J.H. Parker testified that M.S. spent the night at his apartment on one occasion
after he had taken M.S. to a movie. Parker explained that he had taken M.S. to a movie
because J.H. was abusive to M.S. and it "reminds me of what happened to me when I was
a kid." Parker further testified that M.S.'s mother "didn't care neither." According to
Parker, he treated M.S. "like a son, nothing more than that." Parker denied ever sexually
abusing M.S. or tying M.S. up. Parker also testified that he had dumbbells in his brother's
apartment, but he did not have a T-bar or weight bench there. Parker also denied having
pornographic movies or magazines with the exception of some Girls Gone Wild videos, and
he denied ever showing the Girls Gone Wild videos to M.S. Parker testified that he had
previously been convicted of manslaughter and burglary of a building. In addition, Parker
explained that he was no longer living in his brother's apartment in December of 2005. 
When defense counsel asked Parker whether he had any idea why M.S. would say Parker
sexually assaulted him, Parker testified, "Me and [J.H.], we got into an argument and end[ed]
up into a fight." Parker specifically denied laying his penis on M.S.'s leg, tying M.S. to
exercise equipment, and penetrating M.S.'s anus with his penis. Parker testified that he
believed J.H. and her boyfriend caused the case to be brought against him for revenge.

 On cross-examination, the prosecutor offered into evidence photographs of J.H. after
the fight with Parker. Defense counsel objected, as follows: "I object, Your Honor. The
purpose that - it's - under 403, it's more prejudicial than probative of any indication of a
truthfulness or - or anything to do with this particular offense that he's charged with that
we're in court on." The trial court overruled defense counsel's objection and admitted the
photographs into evidence. Parker testified that the photographs depicted J.H. "beat up" and
that he had assaulted her because she was "drunk and full of cocaine" and "I had been
drinking."

Issues One, Two, Three, and Four


 In issue one, Parker argues the trial court abused its discretion by admitting
photographs "of a scantily-clad [J.H.] purportedly displaying the results of a fight she had
with appellant, where they were irrelevant as evidence, thus necessitating reversal." In issue
two, Parker asserts that the photographs constituted extraneous misconduct evidence, and that
the probative value of the same photographs was substantially outweighed by the danger of
unfair prejudice under Rule 403 of the Texas Rules of Evidence. In issue three, Parker
contends that his counsel did not receive proper notice of the photographs "in accordance
with Rule 404(b) or Rule 609(f)" of the Texas Rules of Evidence. In issue four, Parker
maintains that the trial court abused its discretion by admitting the photographs "without
stating its rationale for doing so. . . ." We address these issues together.

 With respect to issue one, Parker's trial counsel only lodged an objection to the
photographs of J.H. under Rule 403 of the Texas Rules of Evidence. Rule 403 of the Texas
Rules of Evidence provides as follows: "Although relevant, evidence may be excluded if its
probative value is substantially outweighed by the danger of unfair prejudice. . . ." Tex. R.
Evid. 403 (emphasis added). By only objecting under Rule 403, counsel conceded that the
photographs were relevant. See id. Furthermore, an issue on appeal must comport with a
proper trial objection. Bell v. State, 938 S.W.2d 35, 54 (Tex. Crim. App. 1996); Elliot v.
State, 56 S.W.3d 780, 781 (Tex. App.--Houston [14th Dist.] 2001, pet. ref'd); see also Tex.
R. App. P. 33.1(a)(1)(A). In this case, counsel's trial objection does not comport with the
relevancy argument he asserts in issue one. See Bell, 938 S.W.2d at 54; Elliot, 56 S.W.3d
at 781; see also Tex. R. App. P. 33.1(a)(1)(A). Accordingly, we overrule issue one.

 We now turn to issues two and four, in which Parker contends the probative value of
the photographs was outweighed by the danger of unfair prejudice, and the photographs were
not otherwise admissible, and that the trial court failed to state its rationale for admitting the
photographs. We review a trial court's admission of extraneous offense evidence under an
abuse of discretion standard. Moses v. State, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003);
Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g). We must
uphold the trial court's ruling if it is within the zone of reasonable disagreement. Wheeler
v. State, 67 S.W.3d 879, 888 (Tex. Crim. App. 2002) (en banc). "Rule 403 favors
admissibility of relevant evidence, and the presumption is that relevant evidence will be more
probative than prejudicial." Montgomery, 810 S.W.2d at 389. A Rule 403 analysis regarding
unfair prejudice requires the trial court to balance the following factors:

 (1) the inherent probative force of the proferred item of evidence along with
(2) the proponent's need for that evidence against (3) any tendency of the
evidence to suggest decision on an improper basis, (4) any tendency of the
evidence to confuse or distract the jury from the main issues, (5) any tendency
of the evidence to be given undue weight by a jury that has not been equipped
to evaluate the probative force of the evidence, and (6) the likelihood that
presentation of the evidence will consume an inordinate amount of time or
merely repeat evidence already admitted.

Gigliobianco v. State, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006); see also Erazo v.
State, 144 S.W.3d 487, 489 (Tex. Crim. App. 2004).

 With respect to Parker's contention that the trial court failed to state on the record its
basis for admitting the photographs, the trial court heard counsel's Rule 403 objection and
overruled it. The record does not reflect that the trial court failed to conduct the proper
balancing test. Parker did not ask the trial court to conduct a balancing test on the record,
and he cannot exclude the possibility that the trial court conducted the balancing test in the
court's mind. See Hernandez v. State, 203 S.W.3d 477, 480-81 (Tex. App.--Waco 2006, pet.
ref'd) (citing Wilson v. State, 7 S.W.3d 136, 144 (Tex. Crim. App. 1999)).

 As for the trial court's balancing of the factors required by Rule 403, the probative
value of the evidence was strong, and since J.H. did not appear as a witness at trial, the State
had no other available means of demonstrating the violence of Parker's alleged attack on her. 
In addition, Lieutenant Boles had already testified, without objection, that J.H. had accused
Parker of physically and sexually assaulting her and that she had reported such assault. It is
unlikely the photographs confused or distracted the jury from the main issues, and it does not
appear from the record that undue weight was given them by the jury. In addition, the
presentation of the photographs constituted a very brief portion of the trial. Based upon a
review of the relevant factors, we cannot conclude that the trial court's ruling regarding the
photographs was outside the zone of reasonable disagreement. See Montgomery, 810 S.W.2d
at 391; see also Wheeler, 67 S.W.3d at 888.

 In his brief, Parker argues the photographs constituted extraneous offense evidence
and were inadmissible under Rule 404(b) of the Texas Rules of Evidence. See Tex. R. Evid.
404(b). However, the objection to the photographs that counsel lodged at trial does not
comport with his argument on appeal. See Bell, 938 S.W.2d at 54; Elliot, 56 S.W.3d at 781;
see also Tex. R. App. P. 33.1(a)(1)(A). Therefore, Parker failed to preserve this issue. 
Accordingly, we overrule issues two and four.

 We now turn to Parker's contention in issue three that his attorney did not receive
proper notice of the State's intention to offer the photographs of J.H. into evidence. The
record reflects that although counsel stated on the record that he had not previously seen the
photographs, he did not lodge an objection to lack of notice. Therefore, we overrule issue
three. See Tex. R. App. P. 33.1(a).

Issues Five, Six, Eleven, Twelve, and Fifteen


 In issue five, Parker argues the evidence was legally insufficient to prove beyond a
reasonable doubt that the offense occurred within the statute of limitations. In issue six,
Parker asserts that "[b]y using 'then and there' after the 'on or about' date alleged in the
indictment and jury charge to describe the time of the offense being alleged, the State
committed itself to proving an ascertainable date of offense in near proximity to said 'on or
about' date, which it has not done, necessitating reversal because of factually and legally
insufficient evidence of same." In issue eleven, Parker contends the State's "failure to
specifically prove any one approximate date of the alleged offense left the evidence legally
insufficient to support full jury consensus or agreement . . ., but rather resulted in an
ambiguous jury verdict inadequate to support conviction as a matter of law." In issue twelve,
Parker asserts that the "State's failure to specify by its proof an approximate date of the
alleged offense left the evidence factually and legally insufficient to support full jury
consensus or agreement on which alleged offense jurors sought to convict upon. . . ." In
issue fifteen, Parker argues the trial court "abused its discretion because there was not
factually sufficient proof of an ascertainable approximate date of the offense alleged by the
indictment with the degree of specificity required by law." We address these issues together.

 As previously discussed, the indictment charged Parker with the aggravated sexual
assault of M.S., a child under the age of fourteen, by inserting his sexual organ into M.S.'s
anus. See Tex. Pen. Code Ann. § 22.021(a)(1)(B)(i). Although neither Parker's brief nor
the State's brief discusses the statute of limitations for aggravated sexual assault, aggravated
sexual assault under section 22.021(a)(1)(B) of the Penal Code is, in fact, an offense for
which there is no limitation by statute. See Tex. Code Crim. Proc. Ann. art. 12.01(1)(B)
(Vernon Supp. 2008); see also Tex. Pen. Code Ann. § 22.021(a)(1)(B)(i). Accordingly, we
overrule issue five.

 With respect to issue six, a legal sufficiency review requires us to view the evidence
in the light most favorable to the verdict and determine whether any rational trier of fact
could have found the essential elements of the offense beyond a reasonable doubt. Jackson
v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Ross v. State, 133
S.W.3d 618, 620 (Tex. Crim. App. 2004). In reviewing the evidence for factual sufficiency,
we ask whether a neutral review of all the evidence, both for and against the finding,
demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the
jury's determination, or the proof of guilt, although adequate if taken alone, is greatly
outweighed by contrary proof. Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000);
see also Watson v. State, 204 S.W.3d 404, 414-15, 417 (Tex. Crim. App. 2006).

 The indictment alleged that "on or about the 20th day of December, Two Thousand
and Five, and anterior to the presentment of this indictment, in the County of Jefferson and
State of Texas, did then and there sexually assault [M.S.]. . . ." "On or about" language
permits the State to prove that the offense occurred on any date that is prior to the
presentment of the indictment and is within any applicable statutory limitations period. 
Garcia v. State, 981 S.W.2d 683, 685-86 (Tex. Crim. App. 1998) (en banc). Although M.S.
was somewhat unclear regarding the precise date on which Parker committed the offense, we
presume the jury, when faced with conflicting evidence, resolved any conflicts in favor of
the prevailing party. Furthermore, unless the date is a material element of an offense, an
indictment need not specify the precise date on which the charged offense occurred. Id. The
primary purpose of specifying a date in the indictment is not to notify the accused of the date
of the offense; rather, the purpose of specifying a date is to show that the prosecution is not
barred by the statute of limitations. Id.

 As previously discussed, there is no statute of limitations for aggravated sexual
assault. See Tex. Code Crim. Proc. Ann. art. 12.01(1)(B); see also Tex. Pen. Code Ann.
§ 22.021(a)(1)(B)(i). Parker has not demonstrated that the date was a material element of the
offense. See generally Garcia, 981 S.W.2d at 685-86. However, assuming arguendo that
the State was required to produce legally and factually sufficient evidence regarding the date
of the offense, we find that a rational jury could have found the date of the offense beyond
a reasonable doubt. See Jackson, 443 U.S. at 318-19. Furthermore, a neutral review of the
evidence does not demonstrate that the State's proof of the date of the offense is so obviously
weak as to undermine confidence in the jury's determination, or that the proof, although
adequate if taken alone, is greatly outweighed by contrary proof. See Johnson, 23 S.W.3d
at 11. Accordingly, we overrule issues six, eleven, twelve, and fifteen.

Issues Seven, Eight, Nine, Ten, Thirteen, and Fourteen


 In issue seven, Parker contends the trial court erred "because the jury charge's
definition and application of the indictment's date of offense language does not provide
appellant with sufficient notice of the alleged events he must prepare to meet with
controverting evidence and defend against, as required under the Due Process clause. . . ." 
In issue eight, Parker asserts "the jury charge's definition and application of the indictment's
date of offense language does not provide appellant with sufficient notice to assure a
meaningful opportunity to be heard inherent in fundamental fairness under the sixth and
fourteenth amendments of the U.S. Constitution." In issue nine, Parker argues the "on or
about" definition in the jury charge violated his right to fair notice of the charges against him. 
Parker asserts in issue ten that the trial court abused its discretion by failing to instruct the
jury regarding the necessity that any extraneous offenses must be proven beyond a reasonable
doubt. In issues thirteen and fourteen, Parker complains that the trial court abused its
discretion by giving the jury a definition of "on or about" which allowed it to convict on any
of several dates or occasions adduced in evidence by the State, in violation of the
requirement of jury unanimity and article V, section 13 of the Texas Constitution. We
address these issues together.

 The record of the charge conference reveals that Parker did not lodge with the trial 
court any of the complaints he now asserts regarding the charge. When a party does not
object to alleged charge error in the trial court, an appellate court will reverse only if the error
caused egregious harm. Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op.
on reh'g). With respect to the trial court's failure to provide a reasonable doubt instruction
concerning extraneous offenses, the harm we must consider "is the impact of the omission
in the jury charge of a reasonable-doubt instruction." Ellison v. State, 86 S.W.3d 226, 228
(Tex. Crim. App. 2002). Errors that result in egregious harm are those which affect "the very
basis of the case," deprive the defendant of a "valuable right," or "vitally affect a defensive
theory." Hutch v. State, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996) (quoting Almanza, 686
S.W.2d at 172). In assessing the degree of harm, an appellate court must examine the entire
jury charge, the state of the evidence, the arguments of counsel, and any other relevant
information from the record. Id.; Almanza, 686 S.W.2d at 171. "Egregious harm is a
difficult standard to prove and such a determination must be done on a case-by-case basis." 
Hutch, 922 S.W.2d at 171.

 Considering the state of the evidence, the arguments of counsel, and the nature of the
asserted charge errors, we conclude that the definitions and instructions complained of, as
well as the omission of a reasonable doubt instruction regarding extraneous offenses, did not
deprive Parker of a fair and impartial trial. See id. We overrule issues seven, eight, nine, ten,
thirteen, and fourteen.

Issue Sixteen


 In his final issue, Parker argues that when the prosecutor left "unadmitted evidence"
lying in plain view of the jury in Parker's attorney's absence, Parker's counsel's absence
forced Parker to act as his own stand-by counsel, thereby resulting in grounds for mistrial or,
alternatively, violated his right to representation at all critical stages of the trial. The incident
to which Parker apparently refers occurred after the jury had rendered its verdict on
guilt/innocence, but before the punishment phase began. The record indicates as follows:

 THE COURT: Ladies and gentlemen, what we're going to do
is break until 11:00 o'clock. That will give us an opportunity to prepare the
jury instructions for the punishment phase and also . . . allow the parties an
opportunity to prepare for the closing arguments and any additional
presentation that they may wish to make. . . .


 . . . .


 (JURY EXITS)


 (RECESS; PROCEEDINGS RESUME:)


 (COURT SEATED ON THE BENCH)


 (DEFENDANT ESCORTED INTO COURTROOM)


 THE DEFENDANT: Excuse me, Your Honor. Did the jury
see those pictures right there (indicating)?


 THE COURT: You have - I can't talk to you. I'm not allowed
to talk to you, but you can ask your lawyer, okay; and he will ask me any
questions. But you have to go through your lawyer. Okay? That's very
important that you go through your lawyer when you talk to the Court. You
can't address me directly. You have to go through your lawyer. But talk to
him when he gets here. Okay? He'll be here in a minute.

 

 (PAUSE IN PROCEEDINGS; [DEFENSE COUNSEL]
ENTERS)


 The record does not reflect what photographs Parker was referring to when he spoke
to the trial judge, nor does the record support Parker's contention on appeal that the
photographs had not been admitted into evidence. In addition, the record does not reflect that
Parker did not have the opportunity to mention the issue to his counsel when counsel returned
to the courtroom. Finally, Parker cites no authorities supporting his contention that the
incident at issue occurred during a critical stage of the trial. See Tex. R. App. P. 38.1(h). We
overrule issue sixteen and affirm the trial court's judgment.

 AFFIRMED.


 

 STEVE McKEITHEN

 Chief Justice


Submitted on September 11, 2008

Opinion Delivered October 15, 2008

Do Not Publish


Before McKeithen, C.J., Gaultney and Horton, JJ. 
1. Because section 22.021(a)(1)(B)(i) has not substantively changed since the date of
Parker's offense with respect to the offense with which Parker was charged, we cite the
current version. See Act of May 28, 2003, 78th Leg., R.S., ch. 896, § 1, sec.
22.021(a)(1)(B)(i), 2003 Tex. Gen. Laws 2721, 2722 (amended 2007) (current version at
Tex. Pen. Code Ann. § 22.021(a)(1)(B)(i) (Vernon Supp. 2008)).