Court Of Appeals
Fourth Court of Appeals District of Texas
San Antonio


## MEMORANDUM OPINION

No. 04-09-00056-CR

William H. **WALLS**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 290th Judicial District Court, Bexar County, Texas
Trial Court No. 2007-CR-11287
Honorable Pat Priest, Judge Presiding[1]

Opinion by:   Marialyn Barnard, Justice

Sitting:        Catherine Stone, Chief Justice
                Karen Angelini, Justice
                Marialyn Barnard, Justice

Delivered and Filed: December 30, 2009

AFFIRMED

A jury found William H. Walls guilty of aggravated assault with a deadly weapon, and the trial court sentenced him to five years confinement. Walls appeals, claiming (1) the evidence is legally and factually insufficient to support his conviction, and (2) the trial court erred in admitting certain evidence. We affirm the trial court's judgment.

---

[1] The Honorable Pat Priest, sitting by assignment.

### BACKGROUND

The Cammack family owned 250 acres in Bexar County, Texas. The family grew crops and kept cattle. James Benjamin Cammack ("Ben") testified that on May 24, 2007, he and a friend were at the Cammack home when they learned some cattle owned by the Cammacks had gotten out. Ben grabbed a shotgun, and he and his friend went to check the fences along the property line.

When they reached a portion of the fence line at the back of the Cammack property, Ben testified that just across the fence line he saw a blue mini-van, a camouflaged deer blind with two piles of corn scattered around it, Walls, and two other men. The property on the other side of the fence belonged to Ken Gorman. The men had a chain attached to the back leg of a cow and were, according to Ben, attempting to pull the cow away from the fence using the mini-van. When Ben asked the men what they were doing, Walls contended the men, who claimed to have been hog hunting on Gorman's property with his permission, found the cow and her calf dead and were just trying to do the Cammacks a favor by hauling them off. Ben testified the cows belonged to his family, and that they had been shot, the cow's udder and neck were slit, and the calf had its neck slit and was partially gutted. Ben testified the men looked nervous, but there was no hostility.

Ben called his father, Prentiss Cammack, who said he was going to call the police. Ben said he told the men to stay put while he and his friend went to find Gorman. When they found Gorman and told him about the dead cattle, Gorman said he had authorized Walls and the other two men "to shoot for target practice" on his property. Gorman followed Ben back to where the men were waiting.

About that time, Prentiss and another neighbor arrived. Prentiss informed Walls and the other two men that he had called the sheriff and they could not leave. Prentiss told Ben to put the

rest of the cattle in the front pasture. When Ben came back fifteen to twenty minutes later, Walls was upset. According to Ben, Walls had "figured out" he and his friends were not going to be allowed to leave until law enforcement arrived. Walls wanted to leave, but Prentiss told him to calm down and wait for the police. At that point Walls became angry and retrieved a shotgun from the mini-van. Ben described Walls as belligerent and hostile.

According to Ben, Walls was waiving the shotgun around as if he were trying to force his way out. Ben testified his father was about fifteen feet in front of him, and Walls was "talking trash." Walls was heard to say "one flip with one round in the chamber," and he was holding the shotgun up and "talking trash." Ben testified Walls put a round in the chamber – he said he knew this because Walls pulled back the action on the shotgun and let it loose. Ben said Walls was moving closer to them. Ben testified he was concerned for himself and his father. He felt Walls had threatened to shoot them. Ben denied ever holding his shotgun in a threatening manner, and testified his father, who had only a knife, never exhibited the knife during the confrontation.

Ben believed Walls was angry because Ben still had his shotgun. Prentiss told Ben to unload his weapon, which he did, but Walls was still upset. So, at Prentiss's direction, Ben put his shotgun down, but Walls still did not put his shotgun down. Eventually Prentiss and one of Walls's friends were able to calm him down, and he put the shotgun back in the van. At some point, Walls had called his wife, and when she arrived Walls and his friends put their guns in her vehicle and she started to drive away. As she left, a Bexar County deputy arrived and stopped her.

After conducting an on-site investigation, the deputy arrested Walls, who was eventually charged with aggravated assault.

**DISCUSSION**

*Legal and Factual Insufficiency*

The indictment alleged that Walls:

> . . . did intentionally and knowingly THREATEN Prentiss Cammack, hereinafter referred to as complainant, with IMMINENT BODILY INJURY, and [Walls] did use and exhibit a deadly weapon, to wit, a FIREARM, by PICKING UP SAID DEADLY WEAPON AND LOADING A ROUND INTO THE CHAMBER OF IT WHILE WALKING TOWARD THE COMPLAINANT.

*See* TEX. PENAL CODE ANN. §§ 22.01, 22.02 (Vernon Supp. 2009). Sections 22.01 and 22.02 of the Texas Penal Code define the offense of aggravated assault, as alleged in this case, as using or exhibiting a deadly weapon while intentionally or knowingly threatening another with imminent bodily injury. *Id*. The offense does not require that an offender load a round into the chamber of the weapon as he walks toward the complainant. However, Walls argues that because the State chose to allege these facts in the indictment, it was required to prove them beyond a reasonable doubt. Walls contends that because the State failed to prove he loaded a round into the chamber of the weapon while walking toward Prentiss, the evidence is legally and factually insufficient to support his conviction.

In the past, Texas courts held allegations in an indictment that were not essential to constitute the offense, and which could be omitted without affecting the charge against the defendant, were "surplusage" and could be disregarded. *See, e.g., Eastep v. State*, 941 S.W.2d 130, 134 (Tex. Crim. App. 1997); *Whetstone v. State*, 786 S.W.2d 361, 364 (Tex. Crim. App. 1990). There was, however, an exception to this rule – if the allegation in the indictment was "descriptive of that which is legally essential to charge a crime, the State must prove it as alleged though needlessly pleaded." *Id*. This exception to the general surplusage rule is often referred to as the "*Burrell* exception" because it is

-4-

attributed to the court's decision in *Burrell v. State*, 526 S.W.2d 799 (Tex. Crim. App. 1975). *Gollihar v. State*, 46 S.W.3d 243, 250 (Tex. Crim. App. 2001). It is the *Burrell* exception upon which Walls relies to support his argument.

Walls's reliance on the *Burrell* exception is misplaced. In *Gollihar*, the court of criminal appeals overruled surplusage law, including the *Burrell* exception. *Id.* at 256. Instead, the court reaffirmed the fatal variance doctrine. *Id.* Under the fatal variance doctrine, a variance between the wording of an indictment and the evidence presented at trial is fatal only if it is material and prejudices the defendant's substantial rights. *Id.* at 257. "[W]hen faced with a sufficiency of the evidence claim based upon a variance between the indictment and the proof, only a 'material' variance will render the evidence insufficient." *Id.* This is because the sufficiency of the evidence is measured by a hypothetically correct jury charge, and the hypothetically correct jury charge "will take into consideration the fatal variance doctrine and . . . [a]llegations giving rise to immaterial variances may be disregarded in the hypothetically correct charge." *Id.*; *see Malik v. State*, 953 S.W.2d 234, 239-40 (Tex. Crim. App. 1997) (holding sufficiency of evidence is measured by hypothetically correct jury charge).

Applying the *Malik* and *Gollihar* principles to this case, the question is whether the variance between the allegation in the indictment, regarding the loading of the shell into the weapon, and the State's proof at trial was a "material" one that prejudiced Walls's substantial rights. In other words, did the indictment sufficiently inform Walls of the charge against him so as to allow him to prepare a defense at trial, and would the indictment subject him to the risk of being prosecuted later for the same crime? *See Gollihar*, 46 S.W.3d at 258.

There is no indication in the record that Walls was unaware that the State was attempting to prove he committed the offense of aggravated assault, i.e., that he intentionally or knowingly threatened Prentiss with imminent bodily injury and used or exhibited a deadly weapon. *See* TEX. PENAL CODE ANN. §§ 22.01, 22.02. The unnecessary allegation that Walls did so by walking toward Prentiss while loading a round into the weapon did not impair Walls's ability to prepare a defense. *See Gollihar*, 46 S.W.3d at 258. Wall's defense was that he never threatened Cammack, but feared for his safety and felt it necessary to retrieve his shotgun to protect himself because Ben held a loaded shotgun on Walls and his friends, and Ben was told by his father to shoot them if they attempted to leave. According to Walls, he was using his weapon in an attempt to get Ben to put his down. Walls's defense did not hinge upon whether he loaded a round into his weapon after he retrieved it.

The allegation that Walls loaded a round into his weapon does not subject Walls to the risk of retrial for the same crime, that is, it does not subject him to double jeopardy. If Walls were reindicted for aggravated assault with a deadly weapon as to Prentiss, a review of the record would quickly foreclose any possibility of a retrial. *See United States v. Apodaca*, 843 F.2d 421, 430 n.3 (10th Cir.) (holding that entire record, not just indictment may be referred to in protecting against double jeopardy in event of subsequent prosecution), *cert. denied*, 488 U.S. 932 (1988).

Based on the foregoing, we hold the variance between the indictment and the State's proof at trial was not material, and therefore must be disregarded in a sufficiency of the evidence review under a hypothetically correct jury charge. *See Gollihar*, 46 S.W.3d at 258. Because Walls's insufficiency claims are based solely on the immaterial variance, which must be disregarded, issues one and two are overruled.

### *Admission of Evidence*

Walls claims in his third issue that the trial court erred in admitting certain photographs into evidence because they were irrelevant and were more prejudicial than probative. *See* TEX. R. EVID. 401, 403. The pictures to which Walls refers are the pictures of the dead cow and calf.

As to his Rule 403 complaint, that the pictures should not have been admitted because the probative value was outweighed by their prejudicial effect, we hold Walls has waived this alleged error. At trial, Walls's only objection was that the photographs were irrelevant. This objection does not comport with the Rule 403 portion of his appellate complaint. An appellate complaint must correspond to the objection made at trial. *Dixon v. State*, 2 S.W.3d 263, 265 (Tex. Crim. App. 1998) *Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995) (en banc). An objection stating one legal theory may not be used to support a different legal theory on appeal. *Bell v. State*, 938 S.W.2d 35, 54 (Tex. Crim. App. 1996), *cert. denied*, 522 U.S. 827 (1997); *Broxton*, 909 S.W.2d at 918.

With regard to relevancy, Walls argues the photographs were not relevant to proving any fact at issue; rather, their admission served only to "improperly inflame the minds of jurors." Admissibility of a photograph is within the trial court's discretion. *Gallo v. State*, 239 S.W.3d 757, 762 (Tex. Crim. App. 2007), *cert. denied*, 128 S.Ct. 2872 (2009).

During his testimony, Ben graphically described the injuries suffered by the cow and the calf. He stated both animals had been shot and their throats slit. Ben testified the cow's udder had been slit, and the calf had been partially gutted. Prentiss subsequently testified, describing the same injuries to the cow and calf. Walls did not object to any of this testimony. Because these witnesses graphically testified without objection to the condition of the cow and calf, we hold any error in the admission of the photographs was rendered harmless by the admission of the Cammacks' testimony.

*See Lane v. State*, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004) (holding that error, if any, in admission of evidence is cured where same evidence comes in elsewhere without objection); *Leday v. State*, 983 S.W.2d 713, 716-18 (Tex. Crim. App. 1998) (holding that erroneous admission of evidence is rendered harmless by admission of similar evidence without objection). The photographs were mere depictions of previously unobjected to testimony. *See Gallo*, 239 S.W.3d at 762 (holding that photograph is relevant and admissible if verbal testimony as to matters depicted in photographs is relevant and admissible). Accordingly, we overrule Walls's third issue.

## CONCLUSION

Having overruled Walls's issues, we affirm the trial court's judgment.

Marialyn Barnard, Justice

DO NOT PUBLISH